WATSON *v.* THOMAS.

PATENTS; INTERFERENCE; DILIGENCE.

1. A patent granted to a party to a subsequently declared interference when granted inadvertently and on an application filed subsequently to that of the other party, will not, in the interference proceeding, avail the party to whom it is granted.

2. The junior party to an interference involving the invention of an improvement in package-filling and weighing machines, consisting in the substitution of two hoppers for one, who filed his application fifteen months after that of his adversary, and conceived the invention eleven months before the latter filed his application, will be held to be lacking in diligence, and not entitled to an award of priority, where it appears that, between the date of his conception and his adversary's filing date, he did nothing to reduce the invention to practice beyond making some working drawings and a blue-print of them, and that during that time he was busy with a single-hopper machine and took out a patent for it; and where no reason is shown why he could not have applied for a patent for the invention of the issue.

No. 230.   Patent Appeals.   Submitted November 11, 1903.   Decided January 5, 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.                     *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. A. P. Greeley* and *Mr. J. L. Stackpole, Jr.,* for the appellant.

*Mr. Philip Mauro, Mr. Benjamin Phillips,* and *Mr. L. S. Bacon* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference cause. The subject-matter of dispute between the parties is an improvement in package-filling and weighing machines, stated in the following three counts as formulated in the Patent Office:

"1. In a package-filling machine, the combination of two feed-chutes which discharge successively into the same package, and which discharge simultaneously into different packages, means which cut off the flow from one chute after a predetermined period of time, and a cut-off for the second chute controlled by the weight of the filled package, substantially as described.

"2. In a weighing and package-filling machine, the combination of two hoppers, mechanism which carries the packages first to a position where one hopper discharges directly into the packages and partially fills the same, mechanism which closes the outlet from the first hopper, after a predetermined open period, irrespective of the weight or quantity of goods, mechanism which then transfers the packages to the scales, mechanism which then opens the flow from the second hopper directly into the package while on the scales, and mechanism which is actuated by the tipping of the scales to cut off the flow, substantially as described.

"3. In a weighing and package-filling machine, the combination of two hoppers, mechanism which carries the package first to a position where one hopper discharges directly into the package, mechanism which cuts off the flow from the first hopper

when the package is partially filled, mechanism which then transfers the package to the scales, mechanism which opens the flow from the second hopper directly into the package while on the scales, and mechanism which is actuated by the tipping of the scales to cut off the flow, substantially as described."

The invention in issue seems to have consisted mainly in the substitution of two hoppers for one in well-known weighing and package filling machines. The appellee, Edward G. Thomas, is the senior party. He was the first to file his application for letters patent, which came into the Patent Office on December 17, 1896, and he made no attempt in his testimony to establish any prior date, either of conception of the invention or of its reduction to practice, being, as it seems, content to stand by his filing date as that of constructive reduction to practice. George W. Watson, the appellant and the junior party in the interference, filed his application on March 11, 1898, nearly fifteen months after Thomas; and apparently through some inadvertence the application was permitted to go to patent on September 26, 1899. The interference between the parties was declared on April 24, 1901.

The examiner of interferences adjudged priority of invention in favor of Thomas. His decision was reversed by the board of examiners, whose judgment was in favor of Watson. The judgment of the board of examiners in turn was reversed by the Commissioner of Patents, who concurred with the examiner of interferences in awarding judgment of priority to Thomas. From his decision Watson has appealed to this court.

The appellee Thomas, as already stated, stands by the date of his application, December 17, 1896, as that of his conception and constructive reduction to practice. The appellant Watson, whose patent, of course, will not avail him in the present controversy, is abundantly shown by the testimony, and is in fact conceded by the appellee, to have conceived the invention as far back as January 10, 1896, upwards of eleven months before the date of Thomas's application. And it is also shown and conceded on the part of Watson that he did not reduce his conception to practice before January, 1897. He then permitted

more than another year to elapse before he filed his application for patent, on March 11, 1898.    Watson then was confessedly the first to conceive the invention and the second to reduce it to practice; and the question to be determined is whether he was in the exercise of due diligence when Thomas entered upon the field of invention on December 17, 1896.    The determination of the question depends upon the action or inaction of Watson during the period intermediate between the date of his conception of the invention, January 10, 1896, and the filing date of Thomas's application, December 17, 1896.    But during all this period we find no evidence whatever of action on the part of Watson to reduce his conception to practice, beyond the making of some working drawings and a blue-print taken from them, if indeed these were made during that interval; for their date is left in extreme doubt by the testimony, and it is not at all certain that they were made before January of 1897.    Even if they had been made before the filing of Thomas's application, they could scarcely be held to have been a manifestation of due diligence on the part of Watson.    During the whole of the year 1896 he was busy with the single-hopper machine; and during the year he took out a patent for that machine.    If he had the device of the double hopper perfected in his own mind, no reason is shown why it could not have been reduced to practice; nor is there any reason shown why he could not have applied for a patent.

We are entirely satisfied that the Commissioner was right in his decision, and that his award of priority to Thomas should be affirmed.

The clerk of the court will certify this opinion, and the proceedings of this court in the premises, to the Commissioner of Patents, according to law.                        *Affirmed.*